UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-147-H

MARTHA HOLIFIELD                                        PLAINTIFF
as Guardian of the Estate of
Ronald A. Sweeney


V.


BEVERLY HEALTH AND REHABILITATION
SERVICES, INC.
d/b/a Mt. Holly Nursing Center                          DEFENDANT


**MEMORANDUM OPINION AND ORDER**


This is a diversity case recently removed to federal court which concerns allegations of

negligence against Defendant, Beverly Health and Rehabilitation Services, Inc., d/b/a Mt. Holly

Nursing Center ("Mt. Holly").  The actual Plaintiff is Martha Holifield, who is the guardian of

the Estate of Ronald A. Sweeney.  This action arose from the events during Mr. Sweeney's stay

at the Mt. Holly nursing home during his last years.

The current motion concerns a procedural issue.  Defendant has moved to dismiss or stay

this lawsuit based upon the terms of an agreement that requires that claims such as these be

resolved by arbitration (the "ADR Agreement").  The Court has discussed this case with counsel

and has reviewed supplemental submissions from each.  The Court finds no evidence supporting

a legal basis for ignoring the ADR Agreement.  Though this is an important and sensitive issue,

it is not one which should change the result in Plaintiff's substantive legal claims.

I.

Mt. Holly is a nursing home.  On February 16, 2007, Holifield, acting on behalf of Mr. Sweeney secured his admission to Mt. Holly.  On that day, Mt. Holly provided Ms. Holifield with numerous documents to sign as part of the admission process.  Mt. Holly's representative apparently did not explain the documents individually, and instead presented them in a group for signature.  According to Holifield, a Mt. Holly representative told her the documents needed to be completed in order for Mt. Holly to be reimbursed by Medicare.  Somewhat naturally, Holifield inferred from this purported statement that the documents were necessary for admission of a patient.  Among those documents was the ADR Agreement. Mt. Holly says that Holifield executed the ADR Agreement on behalf of Sweeney and had the power to do so based upon a valid power of attorney ("POA") dated November 13, 2001.  Now, Mt. Holly wants to enforce the ADR Agreement by resolving this dispute through arbitration.

On behalf of Sweeney, Holifield argues that the ADR Agreement is unenforceable because: (1) the POA was facially defective or void, (2) the ADR Agreement was facially defective; and (3) the ADR Agreement was procured by fraud and does not express the intent of the parties.  Plaintiff vigorously argues that no one explained the ADR Agreement to her and that, in any event, she never intended to execute that agreement in her capacity as a power of attorney.

II.

The Court finds very little factual or legal support for the notion that the POA is unenforceable due to its wording or form of execution.  Indeed, Plaintiff conceded as much in discussion in chambers.

Both Holifield and Sweeney executed the POA and Charlotte Delaney, an authorized

2

Kentucky notary, attested to the signatures.  Kentucky notary statutes do not require the notary to use a seal.  *See* Ky. Rev. Stat. Ann. § 423.160(5)("Short Forms of Acknowledgment by Any Public Officer, Trustee, or Personal Representative").  Although Delaney failed to expressly indicate her capacity as a notary public, the Court does not believe that such an omission renders her acknowledgment of the execution of the power of attorney defective.  *See* Ky. Rev. Stat. Ann. § 423.160 ("The authorization of the forms in this section does not preclude the use of other forms.").

Holifield also argues that the POA is invalid because Sweeney was legally incompetent to execute it when he affixed his name to the document due to his mental illness.  Holifield has the burden of establishing that Sweeney lacked such legal capacity, which in Kentucky is defined as "the ability to understand and appreciate the consequences of the particular transaction."  *Conners v. Eble*, 269 S.W.2d 716 (Ky. 1954).  The determination of capacity is a question of law.  *Id.*  Holifield offers no medical documentation of Sweeney's mental illness and relies on her sworn testimony that Sweeney "had become so mentally ill he could not take care of any of his business" at the time he signed the POA.  That Sweeney's signature had a "shakiness" to it does not suggest a lack of capacity.  Holifield's own testimony that "[t]here is no way [Sweeney] understood that [the form] was a Power of Attorney or what a Power of Attorney even was," without other supporting evidence, is insufficient to prove that Sweeney lacked the requisite ability to execute the POA.

The Court concludes that based on the evidence available the POA represents a valid assignment of legal authority from Sweeney to Holifield to act on his behalf.

III.

Holifield focuses her attacks the ADR Agreement.  As a general matter, agreements such as this are enforceable under federal law.  9 U.S.C. § 1 *et seq.*  Indeed, the Federal Arbitration Act evidences a preference for arbitration where all other prerequisites are met.  *Preston v. Ferrer*, ____ U.S. _____, 128 S.Ct. 978, 979-81 (2008)(holding "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA"); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "The existence of a valid arbitration agreement as a threshold matter must first be resolved by the court."  *Paul Miller Ford, Inc. v. Rutherford*, –S.W.3d– 2007 WL 4553662 (Ky. Ct. App. 2007)(citing *Moses H. Cone*, 490 U.S. at 24-45; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)).

This Court determines the existence of a valid arbitration agreement based on fundamental principles governing Kentucky contract law.  *Id.*  Here, Holifield argues that the ADR was "procured by actual or constructive fraud" and is therefore void and should be cancelled or rescinded.  She also argues that the manner in which Mt. Holly presented her with the arbitration agreement was unconscionable.  It is true that under Kentucky law a contract may be rescinded or voided on the basis of fraud or unconscionability. *See, e.g., Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 339-40 (Ky. Ct. App. 2001).

A.

First, the Court considers Holifield's allegations of fraud.  To show fraud under Kentucky law, the plaintiff must establish six elements by clear and convincing evidence: the defendant a) made a material misrepresentation; b) which was false; c) which was known to be

false or made recklessly; d) which was made with inducement to be acted upon; e) which plaintiff acted in reliance upon; and f) which caused plaintiff injury. *United Parcel Service v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). In this case, Holifield states that someone at Mt. Holly "told me that those were papers that needed to be filled out so Mt. Holly could get paid by Medicare" and "I was assured that all my signature had to do with was Mt. Holly getting paid by Medicare." Holifield Affidavit ¶ 6.  She admits that, "I didn't read all the papers, and relied on this person to tell me the truth." *Id.*  However, although Holifield states that the Mt. Holly representative was "in a real hurry and kept pushing papers at me to sign," she does not say that she was denied an opportunity to read any of the papers.  Notably, Holifield does not say that Mt. Holly told her that signing the documents was a requirement of admission, only that the process left that impression.

Under Kentucky law, one who signs a document after having an opportunity to read it is "bound to the contract terms unless there was some fraud in the process of obtaining his signature." *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 767 (Ky. App. 1985)(citing *Prewitt v. Estate Building & Loan Assoc.*, 156 S.W.2d 173 (1941); *Conseco*, 47 S.W.3d at 341.  In *Cline*, a Kentucky appellate court considered how the opportunity to read a contract affects a plaintiff's claim that he was fraudulently induced to enter the contract.  *Cline* held that a contract cannot be *rescinded* on the basis of fraud where "negligence in failing to read the contract prevents any reliance on oral representations at the time of his signing." *Id.* at 766; *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky. 1931) ("As a rule, if a party is able to read and has a chance to do so, but omits this precaution because of his adversarys' [sic] statements, as to the contents of the instrument, his negligence will estop him from claiming that the instrument is

5

not binding")(quoting *Shores-Mueller Co. v. Lonning*, 140 N. W. 197, 199 (Iowa 1913). As

Kentucky courts have long recognized:

> One sui juris and in possession of his faculties, contracting at arm's length, and who is
> able to read and write, is not permitted by the law to rely exclusively upon the statements
> of the other contracting party as to the contents of a writing which the former signs.
> There must be something said or done by the party charged with the fraud which would
> be reasonably calculated to disarm or deceive one of ordinary prudence and to prevent
> him from using such diligence as an ordinarily prudent man would use in the execution of
> a contract under the same or similar circumstances. When, therefore, the law speaks of
> misrepresentations by the party charged with the fraud, it means that the representations
> must have been not only untrue, but also made under such circumstances as would be
> reasonably calculated to deceive one while exercising ordinary care for his own
> protection.

*Kreate v. Miller*, 11 S.W.2d 99, 102 (Ky. 1928)(quoting *United Talking Mach. Co. v. Metcalf*,

191 S.W. 881, 883 (Ky. 1917)).[1]

Whether or not a party exercised ordinary care in signing a contract she did not read

depends, in part on "the extent of the confidence he is entitled to place in the person procuring

his signature." *Cline*, 690 S.W.2d at 767 (quoting *Kreate*, 11 S.W.2d at 102). Thus in

recognition of the "fiducial" relationship that exists between siblings, a Kentucky court held that

it was a jury question whether siblings could cancel the instrument they had signed without

reading in reliance on their brother's representation as to what it concerned. *Lemaster v. Caudill*,

328 S.W.2d 276, 280 (Ky. 1959). In that case, the siblings charged that their brother had

misrepresented the essential nature of the instrument by saying that it concerned the division of

funeral expenses when in fact it transferred valuable mineral interests. *Id.* (distinguishing

reliance on a brother's statements from situations where parties are "contracting at arm's

---

[1]However, although an oral representation contrary to the actual language of the contract will not result in a
recision, a party may yet be "liable for *damages* for fraud in inducing the party to sign" the contract. *Id.* (emphasis
added) (citing *Kreate v. Miller*, 11 S.W.2d 99, 101 (Ky. 1928)).

length.").

Here, Holifield argues that the relationship between a nursing home and its residents establishes a similar special relationship which entitled Holifield to rely on Mt. Holly's representative's statements that the papers she signed were only for Medicare reimbursement purposes. However, the facts here are distinguishable from *Lemaster* in two important ways. First, in *Lemaster,* the sibling made an affirmative misrepresentation about substantive rights. Here, Holifield cites only general statements about a group of documents, one of which affected procedural rights.  Unlike in *Lemaster*, Holifield does not allege that anyone told her that the Agreement, specifically, was something other than what its heading identified it to be: "RESIDENT AND FACILITY ARBITRATION AGREEMENT (NOT A CONDITION OF ADMISSION – READ CAREFULLY).  Such a general description of several documents would not seem to be a "material misrepresentation" with respect to the ADR Agreement.  Regardless, Holifield would still need to show that her decision not to read the documents for herself was an exercise of ordinary care.  This highlights the second difference from *Lemaster*, which is that the "extent of the confidence" a person is entitled to place in a healthcare facility's representative's statements is considerably less than the confidence a sibling is entitled to place in the statement of his brother.  Thus, our case is quite different from *Lemaster* and this Court concludes that Kentucky courts would require a lot more than an "inference" to show fraudulent inducement and to overcome the presumption that Holifield would exercise ordinary care by reading the documents that she signed.

Holifield directs the Court's attention to cases where other state's courts have recognized a special relationship between two parties such a doctor-patient, sea captain-crew, common

carriers-passengers.  By extension, she argues that the relationship between a nursing home and the person admitting a patient imposes an "affirmative duty to disclose and explain [the ADR] before it could have been validly signed."  However, no Kentucky court has imposed a duty to further explain a clearly marked separate document.  This is not surprising, as such a ruling would amount to a significant departure from current Kentucky law.  Consequently, this Court is unwilling to find such a failure a basis for rescission here.

B.

The Court next considers the related question of whether the ADR Agreement was unconscionable.  Under Kentucky law, the doctrine of unconscionability is a "narrow exception" to the fundamental rule that a "written agreement duly executed by the party to be held and who had an opportunity to read it, will be enforced according to its terms."  *Conseco,* 47 S.W.3d at 340 (citing *Cline*, 690 S.W.2d 764).  A unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Id.* (quoting *Louisville Bear Safety Service, Inc. v. S. Central Bell Telephone Co.*, 571 S.W.2d 438, 440 (Ky. 1978)).

In some cases, courts have found arbitration agreements unconscionable when the right to insist upon arbitration is unfairly one-sided.  This particular arbitration agreement is not unusual, however.  It does not abrogate the parties' duties or liabilities, only the forum in which they are to be contested.  Moreover, the ADR Agreement is not actually binding upon the parties at execution.  Either party could rescind the Agreement within thirty days. The language of the ADR Agreement is neither deceptive nor misleading.  Its terms are not substantively unconscionable and the application of it seems fair in these circumstances.

8

The bulk of Holifield's argument concerns allegations of "procedural" or "unfair surprise" unconscionability which "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . ." *Id.* (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999)).  Here, the Court notes that the arbitration agreement was worded clearly, conspicuously and is an entirely separate document.  It states in bold letters, "NOT A CONDITION OF ADMISSION–READ CAREFULLY."  In other bold letters, it clearly states that it restricts the right to a jury trial.  As noted above, Holifield had an opportunity to read it.  Thus, the manner in which Mt. Holly presented Holifield with the ADR Agreement is unlike those situations to which Holifield directs the Court's attention where arbitration agreements were procedurally unconscionable.  *See, e.g. Woebse v. Health Care & Retirement Corp. of Am.*, 977 So. 2d 630 (Fla. Dist. Ct. App. 2008)(finding a arbitration agreement included as pages thirty-three through thirty-seven of a thirty-seven page sequentially numbered document unconscionable where the plaintiff was not given an opportunity to sign the agreement and was told the paper was "required to be signed" for her father's continued stay.).  In sum, Mt. Holly's failure to mention or separately identify the ADR Agreement does not rise to "unconscionable" conduct.  And the facts before the Court do not support Holifield's allegations that anything about the ADR Agreement - a separate and clearly labeled document - was "hidden" or "concealed."

IV.

Holifield also says she intended to sign the paperwork, including the ADR, in her capacity as Sweeney's sister pursuant to Ky. Rev. Stat. Ann. §311.631 ("Responsible Parties Authorized to Make Health Care Decisions") and *not* in her capacity as his attorney-in-fact.

However, the Court has already concluded that the underlying POA was valid and Holifield does not challenge the ability of an attorney-in-fact to execute an arbitration agreement on behalf of the principal.  Holifield's subjective belief that the POA was invalid does not change the result. Moreover, the express language of the ADR Agreement certifies that Holifield was "a person authorized by the Resident or otherwise to execute this agreement and accept its terms."

Finally, Holifield argues that the separate signature line for an authorized representative makes Holifield's signature on the line designated for "Resident" invalid.  The Court disagrees. Holifield signed a line certifying that she was a person authorized to sign the agreement.[2] Indeed, she was, at the time she signed it, Sweeney's attorney-in-fact.  From the language of the ADR Agreement, Holifield's signature as Sweeney's authorized representative could be appropriate on either line.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to stay the proceedings in this lawsuit pending arbitration pursuant to the ADR Agreement is SUSTAINED, and this case is STAYED and removed from the active docket until further order of the Court.

---

[2]Directly above Holifield's signature, the Arbitration Agreement states:

The undersigned certifies that he/she has read this Arbitration Agreement and that it has been fully explained to him/her, that he/she understands its contents, and has received a copy of the provision and that he/she is the Resident, *or a person authorized by the Resident or otherwise to execute this agreement and accept its terms.*

(emphasis added).  Thus, in signing where she did, Holifield certified that she was "a person duly authorized" by Sweeney to "execute this agreement and accept its terms."

10

cc:     Counsel of Record